Thank you, Your Honor, and yes, I did hear your introduction. Thank you to the court, and I apologize that I'm not visual. You might thank yourselves that I'm not visual, it might not be the best face you've ever looked at, but thank you for allowing me to be old school at least one more time. This case has been around, it's, as you know, we're awaiting the Ninth Circuit's decision on two appeals that are going to be argued orally on the 1st of June. And as you've seen in my papers, we've said it makes sense, at least to me and my client, that we take a pause, not rule in our favor certainly, but at least pause and see what the Ninth Circuit has to say because the issues that they're going to be deciding rather quickly are going to be issues that are very important to the decisions of the appeals today. And we certainly encourage everyone to go forward today with our oral argument, but as far as the decision of the court, I just think it makes a lot of sense to just see what the Ninth Circuit has to say, and then if the Ninth Circuit rules against me, it's going to be easier. If the Ninth Circuit rules in our favor, my client and I, then there will be some issues in this case that will become the law of the case as per the Ninth Circuit, and we'll have a bearing upon our ability to resolve the issues in these two appeals before you today. So that's my initial request. It's just a respectful request, and it just is common sense, I think, and saves time and energy resources, but that's all I have to say about that. We also are arguing... Go ahead. I'm sorry. I'll just say, Mr. Bowen, I know I have it here someplace, but it's going to be heard in June 20 or something? No. No. June the 1st. June the 1st. Okay. Yeah. Just 12 days from now. All right. Thank you. So then, of course, we have one of the most important issues of the doctrine, merger, and I know you're familiar with that. I've heard it discussed in the case before us, and obviously, our position is that the merged it into those judgments so that there was no further ability for Judge Coffman to make rulings, especially based upon attorney's fees, due to the doctrine of merger. I was going to stop you for a second on that. There's a variety of different ways of phrasing the merger doctrine under California state law. Some cases do have the broad language you're talking about, but others say the specific claims that were asserted under the contract merge into the judgment, and the remainder of the contract survives. Which of those two strains should we follow, and why? Well, obviously, the case that I cited is Bertie v. Santa Barbara Beach Properties. It's a 145 Calab, a fourth, it's a 2006 case, and essentially indicates that the doctrine of merger, the subcontract, merges into the state court judgments, and it makes sense, because otherwise, I think you would have multiple prevailing parties and a lot of confusion and a lot more litigation, a lot more back and forth, which is happening in these very five appeals that are now pending, stemming from the Darren Davis bankruptcy case. If we don't have finality, if we don't say at some point it's over, then it's going to have attorney-to-motion after attorney-to-motion until, I don't know, maybe one side or the other gives up, or the court says, we don't want to hear anymore, just stop doing this. But it seems to me that Bertie v. Santa Barbara says, listen, the subcontract, as far as attorney's fees are concerned, merges into the state court's judgment, which dealt with attorney's fees. Both sides had a chance to brief their arguments. The matter went up on appeal to the court of appeal in the state of California, which also agreed with my client and I, agreed and affirmed the rulings. So that should be it. And then we get back to the question of whether 523 allows for further attorney's fees, and I heard the case you just were discussing, and again, that will apply here. If 523 is exclusively designed to help consumers, then 523 should not be applied to commercial debt. That's 523D. There are some major distinctions between, you know, we as jurists, the panel members, we don't decide how the cases are going to be argued. And this is an unusual confluence where we have two cases with some overlapping issues. But your case is different. It's pretty clearly not a consumer case, so 523D, the provision we were talking about, which does shift some fees under the bankruptcy code, doesn't exist here. So all that discussion is irrelevant to this appeal. There's two other distinctions, I think, well, there's a multitude of distinctions. Factually, they're very different cases, but one is, doesn't the contract have an anti-merger provision, a survivability provision of the attorney's fees provisions? And how does that, I can guarantee you the California land sale contract doesn't, but this case does. And then there's also a second agreement that you entered into that has some specific attorney's fees provisions too. So can you talk about the survivability clause in the first contract and the attorney's fees provision in the second one, and why those aren't problematic for your position? I appreciate that. Let me go in reverse, if I may. Let's talk about the stipulation. I think that's what you're talking about as you say contract fees. The stipulation was prepared by me. It was prepared at a time when we did not have an opportunity to make any applications for attorney's fees against Mr. Davis because he was in bankruptcy. And that's one of the interesting facts that will be addressed by the Ninth Circuit, and that is Mr. Tavara, who has submitted a declaration, which Judge Kaufman relied upon, and earlier I believe the PAP relied upon, where Mr. Tavara says he was counsel of record from the beginning. Well, that's just not true. And we've provided evidence that Mr. Tavara did not come into the case until almost five years later. And so Mr. Tavara is saying, well, I participated in the stipulation and I know it covered all attorney's fees. Again, that's just not true. And here's how it couldn't be true. If we had applied for attorney's fees against Mr. Davis, who was in bankruptcy when the application was filed, it would have been denied. If we had received an award of attorney's fees against Mr. Davis and been paid, it would have been a preference. We could not have proceeded down that path, which is why in my declarations I said I carefully carved out all of the attorney's fees from 2005 until 2010, which applied to Mr. Davis. And those are the attorney's fees that we were requesting, not anything that was part of that stipulation. The stipulation could not have included the Davis attorney's fees because he was in bankruptcy and there was no provision to say, oh, by the way, even though Mr. Davis is in bankruptcy, this stipulation also applies to him. It simply did not. And it couldn't have because, as I say, there was some $400,000 that had been carved out that were specific to Mr. Davis and predated Mr. Tavara's involvement in the case. He had no knowledge, no first-hand knowledge at all, of what happened in 2005 through 2009. And yet his declaration, which Judge Kaufman had in front of her, said he did, that he was counsel of record from the beginning of the case, which was not true. So again, my point with regard to the stipulation is it simply does not apply to these attorney's fees. It only applies to the post-petition charges that we had been trying to recover against the other defendants, not Mr. Davis. And subsequently, only after the trial of this case, a year ago, did we first and only ever ask for the attorney's fees from 05 to 10 against Mr. Davis. So that's one of the provisions that I think you had asked about. And the other provision with regard to the survivability of the attorney's fees in the case, the issue is, again, I think you've seen is that there were no parties to that subcontract other than my client and T09, which was called itself owner-builder, even though it couldn't have been owner-builder because there were 10 houses, not less than 4. And owner-builder only applies in cases where you're building houses and offering them for sale. If you are, in fact, an owner-builder. The court specifically said, T09, you are not an owner-builder. You never have been. You never will be. And you're also not licensed on top of that. So then you go back to the contract and say, well, who's the contractor? And the court of appeal, and I think even Judge Kaufman pointed out that there is no contractor. I think you're... Can I break in here? I think you're down to five minutes for one thing, but also I think you're talking about us in a prior appeal and are now before the Ninth Circuit. What we're really asking about is what about the provision of the original agreement that says its provisions survive a termination of the agreement? What's the effect of that? The attorney's case provision. The agreement itself is only binding as to T09 and asphalt professionals. There was, as we have discussed before, 1717, the court specifically said does not apply. And then you go to 1021, 1032, which require reciprocity. There was no reciprocity here because there was no signature to the contract. The only person who ever signed the contract for the other side, if I can use that word, was Mr. Davis in a representative capacity. He didn't sign for himself. He signed on behalf of T09. So there is no ability for Mr. Davis or anyone else to say, oh, but this survived when they're not part of the contract. They never were. They never have been. They didn't sign the contract. Only asphalt professionals. I'm sorry. All right. I said all right, and I'm just going to remind you, you're down to under four minutes. Do you want to stop now or reserve your time or... Well, let me just summarize, if I may, for a minute if I can. Obviously we... Whether Mr. Davis had the standing to challenge the attorney's fees because the 523 action had been decided, had not been appealed, and became final before Judge Kaufman made her ruling saying that there was still a claim against Mr. Davis, therefore he had standing. We contend he did not have standing because at that moment when Judge Kaufman made her ruling, there was no claim against Mr. Davis pursuant to 523. And finally, the billings do not show who they're billed to. We pointed out that it's all redacted. We don't know if Mr. Davis ever saw them or ever received them, ever knew about them. It would have been delightful. It would have been wonderful for Mr. Davis to give Mr. Forsley a declaration saying, yeah, I saw them. Those were billed to me. Even if I paid them or not, it doesn't matter, but they're my bills. I saw them. We don't have that in this case. We don't know who they were billed to, but we certainly don't have any evidence that they were billed to Mr. Davis. Thank you. Thank you. All right. You're going to have about two, two and a half minutes when you come back for rebuttal. Understood. Understood. All right. Thank you very much. All right. Mr. Forsley. Yes. Good morning, panel. All of the arguments that Mr. Bowen has made are simply that he's avoided the big elephant in the room that this whole case is up, whether Davis is entitled to fees on a subcontract agreement, it's up on appeal of the Ninth Circuit Court of Appeals. With all respect to this court, it can't change that ruling. It can't go and modify or alter that judgment that's up on appeal. We have to wait for the decision, and it's going to be what it's going to be. It's also the law of the case doctrine. The Judge Coffin decided that Mr. Davis was entitled to attorney's fees under the subcontract. This panel decided that, not this particular panel, but a panel from the map decided that Mr. Davis was also entitled to fees. Between those two doctrines, the court that the court lacks jurisdiction and the law of the case doctrine, this court is kind of stuck as to whatever, it cannot change those rulings. There's nothing else that Asphalt Professionals has brought up that would deny, or some sort of argument that would deny Darren Davis' fees. For example, there was never any argument regarding that the fees were unreasonable or inappropriate, there's nothing there. I know that Mr. Bowen has brought up the doctrine of merger, but API has talked about both sides. It's talking really on both sides of its mouth. In the bankruptcy court, it sought for unpaid invoices and the proofs of claim. It sought for unpaid attorney's fees, and now it's claiming a merger. So, if there were really a merger in API's eyes, it could never have ever sought for unpaid bills and attorney's fees, because they were all merged into the judgment. But API didn't, and the only time API brought up the merger doctrine, when it was unsuccessful on the proofs of claims, unable to get those other invoices, unable to get the attorney's fees, then it said, oh, okay, now, well, now there's just been a judgment, it's merged, and we're going to go forward and just say that there's been a merger, and that was an argument that was brought up after Judge Koffman entered the fee award, and after the BAP actually affirmed the fee award. You know, I see your point, how pleading in the alternative can be sort of unattractive, but this is not a case where there's judicial estoppel or a similar doctrine, because API never prevailed on those claims, right? So, although they are switching their ground, people are entitled to do that sometimes, litigation, aren't they? Yes, they're entitled to do it, but the whole point here is, yes, they're entitled to do it, but nevertheless, they don't really believe that there's a doctrine of merger that applies here because they've made all these arguments, and they're still pursuing those same arguments before the Ninth Circuit Court of Appeal on the appeal, so they can't now come before this court and say there's a doctrine of merger when they're trying to do the same thing before the Ninth Court of Appeal saying there's no doctrine of merger, and that we're entitled to get these invoices, we're entitled to get these unpaid fees that were not part of the You know, on the question of merger, does it matter whether we're talking about a plaintiff or a defendant? I mean, the restatement talks about merger and says the plaintiff's claims and the defendant's defenses to those claims merge into the judgment, but it doesn't talk about merging any other claims or rights the defendant might have into the judgment because the defendant didn't bring the complaint that gave rise to the judgment. Does that distinction apply under California law, and does it make a difference here, if you understand what I'm driving at in an inarticulate way? Yeah, I understand what you're driving at. You know, again, I don't think the doctrine of merger should come up in this particular case because it was not argued before the court below, but even in the subpart of the original subcontract argument regarding whether Davis should get attorney's fees, but nevertheless yes, there could be a merger as to a portion of the contract, but as to fraud, that was never decided, so that could never have merged into a judgment. So there couldn't be a complete merger in this case if that's what the court is driving at because there are claims that are simply undecided, and in fact, Asphalt Professionals is still pursuing that fraud claim in the state court. That's phase three, right, of the trifurcated state court case? That's correct. Phase three is still, I'm waiting for that to start, whenever Asphalt Professionals notifies the state court that wants to proceed forward on that claim, but it's still pending out there. So it's clear with that fraud claim out there that there's not going to be a complete merger of all the claims in this particular judgment. But the right to attorney's fees, in this case anyway, would be tied to the contract claims, right? Would there be an independent right to attorney's fees under the fraud claims? Yeah, the attorney's fees come from the contract, but they also come, if you recall, from the state court judgment. The state court said that API can get its attorney's fees under the contract action and any other cause of action, including the fraud. So as a result, it didn't include all the attorney's fees. It's still available as to the fraud claim. So the judgment actually preserves that right, you're saying? Yes, the judgment itself preserves that right. And I also believe, nevertheless, that you could still get attorney's fees under the fraud, under the contract provision. You can get it from two ways. One is the judgment and one is the contract because the fraud is a separate claim that's based upon the contract. So that would be my argument for the state court if I were the state appellate, the state counsel. And the only thing, the judgment is important because it essentially says that Darren Davis at the alter ego is entitled, and as an alter ego, he would be able to recover his attorney's fees notwithstanding that he did not sign the contract as an individual. So I've covered most of my arguments here. Does the panel have any other questions for me? I don't. I do not. Judge Brekker? No, I don't. Thank you. I guess I've concluded. Thank you. Thank you. All right. Thank you. All right. So Mr. Bowen, you are back with us? Yes, I am. You have two minutes and 27 seconds. Great. Thank you very much. Easiest argument, alter ego. Mr. Forsley still is attempting to confuse, I think, the court that alter ego is a good thing, that it gave Mr. Davis some rights he didn't otherwise have. Alter ego is fraud. It's tantamount to fraud. The Court of Appeals has said that. Alter ego doesn't pass any rights to Mr. Davis. The doctrine of merger argument is jurisdictional. That can come up at any point in time. The cases with regard to the doctrine of merger say whenever it comes. It's something that if the court sees it at the last minute of the last appeal, the court can say, wait a minute, we didn't have jurisdiction to hear this. There's been a merger. So the argument that it's too little too late, again, does not apply to this case. With regard to the Ninth Circuit pending, Mr. Forsley made my argument that we have things pending in the Ninth Circuit that will impact this case, and so we're stuck. I think his words were, we are stuck. Well, if we're stuck, then it seems to me that we should hang on for a short period of time until the Ninth Circuit makes its ruling, and then issues will either become resolved in this case one way or the other. So I really don't think that we need to be concerned about holding on because nobody is going to be hurt. We have money paid into the bankruptcy court. We submitted a document showing that we have over $100,000 in excess of all attorney's fees awards that have been paid into the bankruptcy court as collateral. On top of that, Mr. Forsley has leaned all of the equipment of small professionals in order to have additional security. And even though we've requested that the lien be released, that's never been done. So Mr. Forsley has his lien against millions of dollars of equipment as well as an extra $100,000 of money in the bankruptcy court that has been paid as security for a stay pending the outcome of the appeal. So, Your Honors, I think it just makes sense to me to just wait and see what happens with the Ninth Circuit. But again, the fees, I still want to make the point that the attorney's fees, those invoices, I could never imagine getting paid on those invoices that don't show who they're billed to or that the person who is billed comes forward and says, they were billed to me. I reviewed them. I saw them. I agree with them. Whether I pay them or not doesn't matter, but at least they were billed to me. There's no evidence that those fees were billed to Mr. Davis at all. Unless the court has questions of me, I think that's it. Thank you very much for listening. Well, thank you for your time. Thank you both for your argument. This matter will be under submission. At this time, we will take a break. The judges will meet on the conference line and we'll recommence the calendar at, when is it, 11? 1130? 1130, Your Honor. All right, 1130. Thank you very much.
judges: Taylor, Faris, Spraker